# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EILEEN A. BOWER,<br>        Plaintiff,<br><br>v<br>LAWRENCE COUNTY CHILDREN AND<br>YOUTH SERVICES, EVA LIGHTEL<br>*Lawrence County Children and Youth Services<br>Caseworker,* AND **JAMESON HEALTH<br>SYSTEMS**,<br>        Defendants. | 2:11-cv-931 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are the MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (Document No. 8) filed by Defendant Jameson Health Systems ("Jameson Hospital") and the MOTION TO DISMISS (Document No. 11) filed by Defendants Lawrence County Children and Youth Services ("Lawrence County CYS") and caseworker Eva Lightel ("Lightel"), with briefs in support. Plaintiff Eileen Bower ("Bower") has filed responses in opposition to the motions and they are ripe for disposition.[1]

Factual and Procedural Background

At this stage of the case, the facts set forth in the Complaint must be taken as true and viewed in the light most favorable to Plaintiff. From that perspective, the allegations in the Complaint portray a tragic scenario in which a newborn baby was forcibly removed from his mother's arms due to a "false positive" drug test.[2]

---

[1] Plaintiff's response (Document No. 17) ends abruptly without a signature page and does not address all of Defendants' contentions. Plaintiff has not filed a corrected version despite notice from the Court.

[2] The allegations in the Complaint are calculated to stir strong emotions. The Court is acutely aware that Defendants have not yet had an opportunity to present their respective positions and that the evidentiary record has not yet been developed.

1

Plaintiff Elaine Bower is a resident of Lawrence County, Pennsylvania. On July 12, 2009, Bower attended a barbecue at which she consumed McCormick Foods Supreme Pasta Salad which contained poppy seeds. Moments later, Bower went into labor and was admitted to Jameson Health Center for the birth of her child. During her pregnancy, Bower had received necessary and appropriate prenatal care and had passed every drug screen that had been administered, including a drug test taken on June 22, 2009.

Jameson has a written drug testing policy (the "Policy"), by which all obstetrical patients undergo a urine drug screen in order to identify newborns who may demonstrate symptoms of drug withdrawal and require special observation and treatment. According to the Policy, the initial drug screen is considered positive for opiates if the detection level of opiate metabolites exceeds 300 nanograms/mL. If the initial screen is positive, the Policy requires that a confirmation test be performed. Under the Policy, the test is confirmed positive for morphine if the level detected exceeds 100 nanograms/mL.

Plaintiff alleges that the cut-off concentration levels used by Jameson are far lower than those set by the federal government for federal workplace testing programs and are so low that they are likely to produce "false positive" results. Plaintiff alleges that the federal cut-off level for opiates or morphine is 2000 nanograms/mL. The Court takes judicial notice that on September 30, 1997, the Substance Abuse and Mental Health Services Administration of the Department of Health and Human Services published a revision to drug testing guidelines which increased the testing cut-off level for opiates from 300 to 2000 nanograms/mL. 62 Fed. Reg. 51118-01, 1997 WL 596172 (September 30, 1997). In explaining its action, the Department cited a study which concluded that eighty-seven percent (87%) of positive opiate results in laboratory tests were verified as negative by medical review officers. The Department

specifically noted that "many who have not used heroin but had taken a prescribed codeine or morphine medication ***or eaten poppy seeds (which may contain morphine and/or codeine)*** have also tested positive." *Id*. (Emphasis added). The Department increased the cut-off level to eliminate "false positive" results due to, *inter alia*, ingestion of poppy seeds.

Jameson Policy further required that if a mother tested positive, a drug test be performed on the newborn's urine and meconium. The Policy required Jameson to notify its social service department whenever a maternity patient's initial drug screen was positive. If the confirming test was positive, the Policy required the social services department to notify the Lawrence County CYS. The Policy required notification of Lawrence County CYS even prior to confirmation if any of the following factors are present: (1) prenatal history indicating prior drug use or children in foster care; (2) positive urine screen during pregnancy; (3) physician suspicion; (4) unusual patient behavior; or (5) noncompliant prenatal care.

Plaintiff alleges that Jameson's reporting Policy is not required under federal or state law. Plaintiff further alleges that the Policy was created and carried out in cooperation with Lawrence County CYS. Moreover, Plaintiff alleges that Jameson was aware of the Lawrence County CYS policy to remove a newborn whenever Jameson disclosed a positive drug test.

Upon admission to the hospital, Bower voluntarily submitted to a drug test in conformity with Jameson policy. Nobody asked Bower whether she had eaten any foods that might affect the test results. Plaintiff's initial urine screen came back positive for opiate metabolites, but at a level below 300 nanograms/mL. Jameson performed a confirmation test. The confirmation test indicated that the amount of morphine was so low that there was "no reference range." Plaintiff alleges that the test results were consistent with the ingestion of poppy seeds within hours of the test. Bower avers that she did not engage in any illegal drug use during her pregnancy.

3

On July 13, 2009 (the day Baby Brandon was born), Jameson informed Lawrence County CYS that Bower had tested positive for opiates. At the time, Jameson knew that Baby Brandon's drug tests were negative and that he was not having withdrawal symptoms. Jameson had no reason to believe that Baby Brandon had been the victim of child abuse.

The Complaint alleges that Lawrence County CYS did not perform any investigation to determine whether the test results were a "false positive." Prior to seeking protective custody, Lawrence County CYS did not interview Bower or her family members; did not interview Bower's treating physician, Dr. Bassaly; did not attempt to obtain copies of Bower's medical records; and never inspected Bower's home or investigated whether she had the necessary items to care for an infant. No services were offered to prevent removal of the baby. Lawrence County CYS had received a copy of the drug test results which showed that Bower's opiate level was "no reference range." Nevertheless, in petitioning for the initial order of custody, Lawrence County CYS alleged that Bower had tested positive for opiates and therefore Baby Brandon was without proper parental care. Lawrence County CYS alleged that to allow Baby Brandon to return home with Bower would be contrary to his welfare because he had been exposed to drugs. This position was based solely on the report from Jameson. Plaintiff alleges that Lawrence County CYS had a policy to take immediate action to remove newborns from parents whenever it received, and solely based upon, a report of a positive prenatal test from Jameson.

On the morning of July 15, 2009, caseworker Lightel obtained an *ex parte* court order which granted Lawrence County CYS permission to take custody of Baby Brandon. Quest, apparently the laboratory that performed the drug test, faxed its confirmatory report of "no reference range" to Jameson after the initial custody order was obtained. Later that day, a

member of Jameson discussed the drug test results with Bower.  She pleaded that there must be a mistake, as she was not a drug user.

On July 16, 2009, Lawrence County CYS forcibly removed Baby Brandon from Bower's arms.  Later that day, a seventy-two hour review hearing was held.  It was determined that Baby Brandon would remain in the custody of Lawrence County CYS until an adjudication hearing scheduled for July 21, 2009.  During this interim, Bower contacted Lawrence County CYS to attempt to see her baby.  This effort was unsuccessful.  Bower was informed that both Lightel and her supervisor were off work during this time period.  On July 20, 2009, Lightel came to Bower's home and verified that it would be a healthy living environment for Baby Brandon.  Bower again asked to see her baby.  Lightel informed her that she would try to set it up.  However, Bower's phone calls later that day were not returned.

On July 21, 2009, an adjudication hearing was held.  Lawrence County CYS introduced into evidence the initial drug screen conducted by Jameson which showed "no reference range" for opiates.  Nevertheless, the Master recommended that Baby Brandon remain in Lawrence County CYS custody.  On July 22, 2009, Bower called Lightel numerous times to see her baby.  Eventually, Bower went to Lawrence County CYS and gave Lightel diapers, a blanket, clothes and a baby bath for Baby Brandon.  On July 24, 2009, the Lawrence County Court of Common Pleas entered a custody order consistent with the Master's recommendation.  The same day, Bower was able to see and hold Baby Brandon for one hour.  After that, Baby Brandon was placed in three separate foster care homes.

Baby Brandon was returned to Bower's custody following an adjudication/disposition hearing on September 28, 2009, seventy-five (75) days after he was removed.  Plaintiff alleges

that she endured emotional turmoil and stress due to the forcible seizure of her baby. Plaintiff further alleges that she lost the ability to breast-feed and bond with her infant child.

Plaintiff filed a five-count Complaint. Count I alleges that Lawrence County CYS and Lightel violated her substantive due process rights under the Fourteenth Amendment to the United States Constitution.[3] Count II alleges that Jameson and Lawrence County CYS conspired to violate Bower's constitutional rights. Count III alleges negligence by Jameson, in that it failed to use reasonable care to avoid a "false positive" drug test; failed to ensure that Lawrence County CYS was apprised that the results indicated a "below the reference range"; and violated its own policy by reporting a result below the 300 nanogram/mL screening level. Count IV alleges negligence by Lawrence County CYS and Lightel in that they failed to act reasonably to ensure that the basis for removal of Baby Brandon was substantiated and that the continued custody of Baby Brandon was premised upon reliable information. Count V alleges "false light invasion of privacy" by Jameson for publicizing the "false positive" drug test results to Lawrence County CYS.

Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the legal sufficiency of the complaint filed by Plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original).

---

[3] The Court, and the Defendants, assume that the constitutional claims are brought pursuant to 42 U.S.C. § 1983.

The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly,* the "factual allegations must be enough to raise a right to relief above the speculative level." *Id*. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009).

However, nothing in *Twombly* or *Iqbal* has changed the other pleading standards for a motion to dismiss pursuant to Rule 12(b)(6). That is, the Supreme Court did not impose a new, heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short, plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See Phillips v. Co. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (*citing Twombly*, 550 U.S. at 552-53). Additionally, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id*. (*citing Twombly*, 550 U.S. at 553). As described in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009), the Court must first distinguish between factual allegations and legal conclusions in the complaint and then determine whether the well-pleaded factual allegations and favorable inferences drawn therefrom show an entitlement to relief.

Discussion

The Court will be guided by the thorough and persuasive analysis of Judge David Stewart Cercone of this Court in *Mort v. Lawrence County Children and Youth Services, et al.*, 2011 WL 3862641 (W.D. Pa. August 31, 2011), which involved very similar issues. In *Mort*, Jameson reported to Lawrence County CYS an alleged "false positive" drug test incident to childbirth pursuant to the same Policy at issue in this case. The original and confirmation tests both showed an opiate level of 501 nanograms/mL (above Jameson's cutoff but below the federal standard). Tests on the baby girl were negative. As in this case, Lawrence County CYS obtained an *ex parte* court order and on April 30, 2010 took the baby into protective custody. Family members and an attorney then met with the CYS caseworker and convinced her that the test was a "false positive" caused by eating a bagel that contained poppy seeds. Accordingly, the baby was returned to her mother on May 5, 2010. Mort alleged that the separation lasted for two (2) days after the caseworker realized that the reason for removing the baby was without foundation. Lawrence County CYS subsequently filed a motion to dismiss its dependency petition, stating that "after further investigation, there is no evidence to support illegal drug use by the natural mother." Judge Cercone denied motions to dismiss filed by Lawrence County CYS, the caseworker and Jameson as to substantive due process and constitutional conspiracy claims. The Court granted Jameson's motion to dismiss a negligent infliction of emotional distress claim and plaintiff abandoned a "false light reporting" claim.

There are some factual distinctions which make the alleged conduct in this case more troubling than *Mort*, including: (1) the initial drug tests in *Mort* exceeded the Jameson Policy reporting level, while Bower's allegedly did not; and (2) the alleged deprivation of parental

rights in *Mort* was two days while Bower was separated from Baby Brandon for seventy-five (75) days. The Court will address each of the claims asserted by Plaintiff seriatim.

    1. Count I (Substantive Due Process vs. Lawrence County CYS and Lightel)

Count I alleges that Lawrence County CYS and Lightel violated Bower's fundamental rights under the Fourteenth Amendment. Defendants have raised numerous arguments for dismissal.

Lightel contends that in her role as a child welfare worker, she is entitled to absolute and/or qualified immunity because she relied on Jameson's drug test results to petition a court for an order to protect a child. In response, Plaintiff contends that a caseworker is not entitled to absolute immunity for actions taken during the investigative stage or for actions taken (or not taken) after a judicial proceeding, such as Lightel's refusal to return Baby Brandon promptly. Lightel recognizes that she is not entitled to immunity for an alleged failure to conduct a proper investigation, but points out that multiple judicial hearings resulted in Baby Brandon remaining in protective custody. She further points out that neither she nor Lawrence County CYS had the authority to remove the child without court approval. Both parties recognize the authority of *Ernst v. Children and Youth Services of Chester County*, 108 F.3d 486 (3d Cir. 1997). The Court of Appeals stated that it is "unwilling to accord absolute immunity to 'investigative or administrative' actions taken by child welfare workers outside the context of a judicial proceeding." *Id*. at 495 n.7. The Court notes that in *Ernst*, there was a fully-developed evidentiary record. In *Mort*, Judge Cercone rejected the caseworker's immunity claim. The same analysis applies here, as Bower alleges conduct which occurred outside of the judicial context and lasted for seventy-five (75) days.

9

Lightel also seeks qualified immunity on the basis that she acted reasonably and appropriately. Indeed, Lightel argues that she may have been derelict in her duties if she had <u>not</u> sought a custody order. Bower responds that the reasonableness of Lightel's conduct is a key question of disputed fact. Bower reasons that because the test results were so low, it was incumbent upon Lightel to perform an investigation prior to seeking a custody order. Bower also points to ¶¶ 53 and 55 of the Complaint, which allege that Defendants were repeatedly told that the "false positive" test was caused by ingestion of poppy seeds.

Lawrence County CYS contends that Plaintiff has failed to plead an unconstitutional "custom, policy or practice" and that it cannot be held liable based on respondeat superior. Finally, Defendants contend that their conduct did not violate Bower's substantive due process rights.

In *Mort*, Judge Cercone summarized the applicable legal principles. "The interest of parents in the care, custody, and control of their children is one of the oldest fundamental liberty interests recognized under the United States Constitution." 2011 WL 3862641 at * 7. However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children -- particularly where the children need to be protected from their own parents." *Id*. In other words, "the rights of the parent must be balanced against the state's interest in protecting children suspected of being abused." *Id*. at * 8.

The balancing of these interests does not create a "Catch 22" in which a caseworker will face liability regardless of whether she acts or refrains from acting. Defense counsel posits a false dichotomy in which the caseworker must either obtain protective custody based solely on the drug test or "ignore the test result and do[] nothing." (Lawrence County CYS Brief at 10-

10

11). The law requires a third alternative – a reasonable, individualized investigation.[4] As explained in *Mort*: "To override the parental interest the state must have some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id*. (citing *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1126 (3d Cir. 1997). Removal of a child from parental custody "without reasonable suspicion to believe ongoing parental custody presents a threat to the child's health or safety constitutes an arbitrary abuse of government power." *Id*. (citing *Croft*).

In *Mort*, the Court concluded that the mother had properly pled a substantive due process claim against Lawrence County CYS and the caseworker. The Court reasoned as follows:

> Developing and implementing a policy that separates a mother and a newborn child without an individualized assessment of the specific facts and circumstances at hand and proceeds expeditiously and blindly based on a single piece of information that does not supply reasonable suspicion of child endangerment or ongoing abuse when all other information readily available demonstrates the opposite constitutes conduct that is counter to the traditions, precedents and historical understanding of the Constitution and its meaning. *Croft*, 103 F.3d 1126 (specific and articulable evidence from the circumstances at hand providing reasonable suspicion of child abuse is necessary to separate child and parent and the touchstone to evaluating due process claims of infringement of familial rights) (collecting cases in support); *Nicholson v. Williams*, 203 F.Supp.2d 153, 237 (E.D.N.Y. 2002) ("The government must be able to show 'an objectively reasonable basis' for deciding the child is immediately threatened with harm to justify removal from the mother without prior judicial authorization.... A corollary of this rule is that the government must conduct sufficient investigation into the alleged neglect or abuse it relies upon to establish an objectively reasonable belief that the mother has neglected or abused her child.") (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 516 (2d Cir. 1996)); and *Strail v. Dept. of Children, Youth and Families of State of R.I.*, 62 F.Supp.2d 519, 529 (D.R.I. 1999) ("[T]he due process clause will certainly be offended if children are taken away from their parents without sufficient investigation."); *Cf. Stanley*, 405 U.S. at 656–657 ("Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the

---

[4] Defendants' hypothetical regarding protective custody based on discovery of a cigarette burn on an infant (Brief at 14) is easily distinguishable. The Complaint avers that Baby Brandon's drug test was negative, such that there is no evidence of harm to the infant.

> important interests of both parent and child. It therefore cannot stand."). Formulating and carrying out such a policy reflects repetitive action that is taken after there has been more than sufficient time to deliberate. It can result in the separation of mother and child within days of birth without any valid basis for doing so. Where that happens, the rights involved are fundamental, the deprivation is significant, the government action can be found to be an arbitrary use of government power and the executive action can be said to transcend the realm of negligence and deliberate indifference and reflect conduct that is so clearly arbitrary that it shocks the conscience and therefore violates the substantive due process rights of the affected family. *See Miller*, 174 F.3d at 376.

*Id*. at * 10. The *Mort* Court concluded that a municipal "policy, custom or practice" had been properly pled and identified. The Court also concluded that the caseworker's invocation of absolute and/or qualified immunity was unavailing. The analysis in *Mort* is persuasive and fully applicable to this case. Accordingly, the motions to dismiss Count I will be **DENIED**.


2. Count II (Constitutional Conspiracy vs. Lawrence County CYS and Jameson)

In Count II, Bower asserts a constitutional conspiracy/joint participation claim against Jameson and Lawrence County CYS. Defendants recognize that, under some circumstances, a private entity such as Jameson may be deemed a "state actor." However, Jameson contends that the Complaint does not adequately plead that it jointly participated and reached a mutual understanding with state officials to violate Bower's rights. Jameson concedes that it reported the test results, but argues that it did not participate in any way with the decision of how those results would be used by Lawrence County CYS. In response, Bower points out that the Complaint alleges that Jameson developed the drug testing policy in cooperation with Lawrence County CYS and reported the test results while knowing that Lawrence County CYS would seek custody of the baby based solely on those results.

In *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 941 (1982), the Supreme Court stated: "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under

color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." As explained in *Mort*, the basic question is whether the challenged act can be "fairly attributed to the state." 2011 WL 3862641 at * 14 (citations omitted). The test is fact-intensive, and thus, difficult to resolve at this stage of the case. Plaintiff may prevail by showing either joint participation in a constitutionally-defective scheme or by proving joint participation in a conspiracy to discriminate.

In *Mort*, Judge Cercone concluded that a constitutional conspiracy claim had been properly pled because Jameson allegedly worked closely with Lawrence County CYS to establish the testing program; played an integral role in testing and reporting; and knew that Lawrence County CYS would act to sever custody without undertaking any other investigation. *Id*. at * 17. That analysis is persuasive and equally applicable to the averments in this case. Accordingly, the motions to dismiss Count II will be **DENIED**.

      3.      Count III (Negligence vs. Jameson)

In Count III, Bower alleges that Jameson acted negligently. Jameson also contends that it is immune from tort liability[5] under 23 P.S. § 6318 of the Child Protective Services Law, which states, in relevant part (emphasis added):

> (a) General rule.--A person, hospital . . . that participates **in good faith** in the making of a report, whether required or not, cooperating with an investigation, . . . and **any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities** or provides services under this chapter, **shall have immunity** from civil and criminal liability that might otherwise result by reason of those actions.

---

[5] As Jameson apparently recognizes, a state law cannot provide immunity from an alleged violation of the United States Constitution. *Caswell v. BJ's Wholesale Co*., 5 F.Supp.2d 312, 318 (E.D. Pa. 1998).

Section 6318(b) states that "the "good faith of a person required to report pursuant to section 6311. . . shall be presumed."  Section 6311, in turn, imposes a reporting duty upon medical professionals who have "reasonable cause to suspect" child abuse.  In essence, Jameson claims immunity based on its "good faith" report to Lawrence County CYS.  Plaintiff contends that Jameson's "good faith" is a question of fact, as the Complaint alleges that Jameson did not have "reasonable" cause to suspect child abuse.  Further, the Complaint alleges that Jameson's reporting was not "required."

In addition, Jameson contends that Bower may not recover for alleged emotional suffering under a negligence theory (even if the cause of action is construed to be "negligent infliction of emotional distress") because she has not alleged a physical injury.  Bower contends in her responsive brief that she suffered insomnia and other emotion-related injuries.  She seeks leave to amend the complaint if this element of the claim has not been properly pled.

In *Mort*, the Court dismissed a negligence claim against Jameson.  The Court interpreted Mort's theory to be negligent infliction of emotional distress and concluded that Mort had failed to allege the requisite physical impact.   However, Bower's claim is factually distinguishable because Bower alleges that Jameson violated its own policy by reporting a result below the 300 nanograms/mL cut-off.  Thus, Bower articulates a negligence theory that was not addressed in *Mort*.  The Court concludes that it is adequately pled.  Jameson had a duty to reasonably follow its own drug testing policy, allegedly failed to do so by reporting a result below the cut-off, which caused Baby Brandon to be taken into protective custody.

Whether Bower is entitled to recover for emotional distress is a difficult and unsettled issue of Pennsylvania law.  In *Schmidt v. Boardman Co*., 11 A.3d 924, 948-49 (Pa. 2011), the Pennsylvania Supreme Court recently analyzed the expansion of Pennsylvania's recognition of

14

emotional distress claims, albeit in dicta. The Pennsylvania Supreme Court cited to the "seminal negligence case" of *Sinn v. Burd*, 404 A.2d 672 (Pa. 1979) (mother entitled to recover for mental distress caused by witnessing child's death by automobile even though mother was not in "zone of danger"), as establishing the following rule: "a plaintiff can recover damages for negligent infliction of emotional distress if she establishes that: she was located near the scene of the accident; the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident; and she was closely related to the victim." *Schmidt*, 11 A.3d at 949 (citing *Sinn*, 404 A.2d at 685).[6] The Court emphasized the importance of foreseeability in determining liability.

Recovery has not been limited to instances in which parents have witnessed the death of a child. *See Speck v. Finegold*, 439 A.2d 110 (Pa. 1981) (parent allowed recovery for mental distress caused by birth of unplanned, genetically defective child); *Little v. York County Earned Income Tax Bureau*, 481 A.2d 1194 (Pa. Super. 1984) (allowing recovery by plaintiff who had been wrongfully imprisoned because of negligent misrepresentation of tax bureau that she had failed to pay taxes).[7]

Applying the *Schmidt/Sinn* test to the averments of the Complaint, the Court concludes that Bower is entitled to seek recovery of damages for mental distress. It was certainly foreseeable that the forcible removal of a newborn infant from his mother's arms would cause emotional distress. Bower was located at the scene, contemporaneously observed the incident

---

[6] In *Schmidt*, three justices would have applied this expansive view in strict product liability cases.

[7] It is unclear whether these cases represent an exception to the general rule that bars recovery of "damages for negligently inflicted emotional distress in the absence of a physical manifestation of the emotional distress allegedly suffered." Compare *Houston v. Texaco, Inc.*, 538 A.2d 502, 504 (Pa. Super. 1988) with *Wall v. Fisher*, 565 A.2d 498, 501 (Pa. Super. 1989). In *Sinn*, the Pennsylvania Supreme Court did not identify a physical injury suffered by the mother, other than "great emotional disturbance and shock." 404 A.2d at 685. Even if a physical manifestation is required, it is unclear whether the alleged impact on Bower's ability to breast-feed and insomnia would satisfy that element. Resolution of this issue will require further briefing and development of a fuller evidentiary record.

15

and was closely related to the victim. At the time, it was unclear to Bower whether her custody would ever be restored. In sum, it was foreseeable that Defendants' alleged conduct would cause emotional distress.

Accordingly, Jameson's motion to dismiss Count III will be **DENIED**.

4. Count IV (Negligence vs. Lawrence County CYS and Lightel)

Lawrence County CYS and Lightel argue that they are immune from the negligence claims asserted in Count IV pursuant to 42 Pa. C.S.A. §§ 8541 and 8545. Plaintiff did not respond to this contention.

The Court agrees with Defendants. Section 8541 establishes a general rule of governmental immunity: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." Section 8545 provides a parallel immunity for an employee of a local agency acting within the scope of her job. Section 8542 provides eight statutory exceptions to this rule, but none of the exceptions is applicable to the facts and circumstances of this case. Accordingly, the motions to dismiss Count IV will be **GRANTED**.

5. Count V (False Light Invasion of Privacy vs. Jameson)

Bower alleges in Count V that Jameson "published" the results of her drug test. Jameson contends that this claim fails as a matter of law because there was no "publicity" of the results. Plaintiff has not responded to this contention.

In *Curran v. Children's Service Center of Wyoming County, Inc.*, 578 A.2d 8, 12 (Pa. Super. 1990), the Court stated: "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." The term "publicity" as an element of the tort of invasion of privacy, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id*. (citing Restatement (Second) of Torts, § 652D, comment a.

The Court agrees with Jameson. The allegations of the Complaint do not constitute "publicity" as defined by Pennsylvania law. Jameson did not communicate Bower's drug test results to the public at large or to numerous persons. Rather, the Complaint avers that Jameson reported the test results only to Lawrence County CYS. *See Burger v. Blair Medical Assoc.*, 964 A.2d 374, 379 (Pa. 2009) (disclosure of drug use to employer did not constitute "publicity"). Accordingly, the motion to dismiss Count V will be **GRANTED**.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EILEEN A. BOWER,<br>　　　　　Plaintiff,<br><br>　　　　　v<br>LAWRENCE COUNTY CHILDREN AND<br>YOUTH SERVICES, EVA LIGHTEL<br>*Lawrence County Children and Youth Services Caseworker,* AND **JAMESON HEALTH SYSTEMS**,<br>　　　　　Defendants. | )<br>)<br>)<br>)  2:11-cv-931<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 14th day of November 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that the MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) (Document No. 8) filed by Defendant Jameson Health Systems ("Jameson") and the MOTION TO DISMISS (Document No. 11) filed by Defendants Lawrence County Children and Youth Services (the "Lawrence County CYS") and caseworker Eva Lightel ("Lightel") are **GRANTED IN PART AND DENIED IN PART**. Counts IV and V of the Complaint are **DISMISSED WITH PREJUDICE**.

On or before November 28, 2011, Defendants shall file Answers to Counts I, II and III of the Complaint.

　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　s/Terrence F. McVerry
　　　　　　　　　　　　　　　　　　United States District Judge

cc: **Stanley T. Booker, Esquire**
Email: stb233@yahoo.com

**Marie Millie Jones, Esquire**
Email: mjones@jonespassodelis.com
**John C. Conti, Esquire**
Email: jconti@dmclaw.com
**Richard J. Kabbert**
Email: rkabbert@dmclaw.com