IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EILEEN A. BOWER,<br>        Plaintiff,<br><br>        v<br>LAWRENCE COUNTY CHILDREN AND<br>YOUTH SERVICES,<br>        Defendant. | )<br>)<br>)<br>) 2:11-cv-931<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is DEFENDANT'S MOTION TO AMEND JUDGMENT PURSUANT TO F.R.CIV.P. 59(e) (ECF No. 64) filed by Lawrence County Children and Youth Services ("LCCYS"), with brief in support. Plaintiff Eileen Bower ("Bower") did not file a response by the court-ordered deadline and a pretrial conference is scheduled for September 25, 2013. Accordingly, the motion will be resolved without the benefit of a response by Plaintiff.

Factual and Procedural Background

The facts of this case are more fully presented in the Court's Memorandum Opinion and Order of August 12, 2013 (hereafter the "Summary Judgment Opinion") and are incorporated herein. In short, Bower was admitted to Jameson Hospital on July 12, 2009 to give birth to her second child; she tested positive on an initial urine screen for opiates (Bower claims it was a "false positive" due to the ingestion of a poppy seed salad dressing); and pursuant to its policy, LCCYS took custody of the newborn baby ("Baby Brandon") based solely on this initial screen–without performing any type of investigation to confirm drug use or any danger to the child. Indeed, the LCCYS Intake Screening Form noted that there was no present or impending danger. Bower eventually regained custody of Baby Brandon after seventy-five (75) days.

The record reflects that LCCYS never obtained other evidence of drug use by Bower or danger to Baby Brandon. During her pregnancy, Bower had received necessary and appropriate prenatal care and had passed every drug screen that had been administered, including a drug test taken approximately three weeks earlier, on June 22, 2009. The confirmatory report from Quest indicated that morphine was "present" in Bower's blood, but the reference range was recorded as "NONE DETECTED" (the detection limit of the Quest report was 100 ng/mL). Bower also passed a random drug screen administered by caseworker Eva Lightel on July 20, 2009. There was never any evidence that Baby Brandon had drugs in his system. The LCCYS Intake Screening Form noted that "Baby tested negative." The confirmatory test results on Baby Brandon's meconium were received on July 17, 2013 and were "negative."

It was undisputed that in July 2009, the policy of LCCYS was to seek an ex parte Order granting LCCYS custody of any newborn whose mother had tested positive for an illegal substance. As Lightel testified, it was not necessary for a caseworker to perform any investigation regarding the positive test: "I have the hospital saying she tested positive and that was enough for me." *Id*. at 16. Pursuant to LCCYS policy, the positive drug screen was the only information needed for the caseworker "to get an ex parte order to take the child." *Id*. This was LCCYS policy for all intake workers at that time. *Id*. at 27. Lightel was following LCCYS policy in this case. *Id*. Lightel did not even speak to Bower until after Baby Brandon had been taken into custody.

There were several proceedings in the state court system. On July 15, 2009, Judge John W. Hodge of the Court of Common Pleas of Lawrence County issued a custody Order based on an ex parte petition by Lightel. On July 16, 2009, a seventy-two hour hearing required by the Pennsylvania Child Protective Services law commenced before Master Susan Papa, at which

2

Bower was present along with counsel Deborah Shaw. Bower was unwilling to accept that LCCYS was going to take her son. Bower testified that during a recess, the Master came into a back room and yelled at her, and Bower and her attorney then decided to waive the hearing. An adjudication hearing was scheduled on the following Tuesday, July 21, 2009, at which Bower was represented by counsel. Master Papa found that Baby Brandon should remain in LCCYS custody, stating: "Mother tested positive for opiates at child's birth." On July 24, 2009, the Lawrence County Court of Common Pleas adopted the Master's recommendations and continued the hearing until September 28, 2009. On September 28, 2009, seventy-five (75) days after he was removed, Baby Brandon was returned to Bower's physical custody following an informal adjudication/disposition hearing with Master Papa. The Master's recommendation was adopted by Court Order of October 8, 2009. On December 3, 2009, a final hearing was held in the Lawrence County Court of Common Pleas and LCCYS involvement was terminated. On December 9, 2009 legal custody of Baby Brandon was returned to Bower.

On November 14, 2011 this Court issued a Memorandum Opinion which granted Defendants' Motion to Dismiss as to Counts IV and V, but denied the motion as to Counts I-III. In its Summary Judgment Opinion, the Court granted summary judgment in favor of Defendants Lightel and Jameson Hospital and dismissed them as parties. The Court also granted summary judgment in favor of LCCYS on Count II of the complaint. However, the Court denied LCCYS' motion for summary judgment on Count I of the complaint (substantive due process) and granted summary judgment in favor of Bower against LCCYS on Count I sua sponte. The Court noted that the issue of Plaintiff's entitlement to damages on Count I will be submitted to a jury.

The instant motion for reconsideration by LCCYS followed.

Standard of Review

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex-rel Lou—Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (*citing Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)). It is well-established that a party must overcome a high hurdle to succeed in such a motion. A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates: (1) a change in the controlling law; (2) a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id.* Motions for reconsideration are not intended to provide a "second bite at the apple" or to provide a mechanism for a losing party to ask the Court to rethink its decision.

Discussion

LCCYS contends that the Court erred by granting summary judgment in favor of Bower on the substantive due process claim without: (1) notice; (2) identifying material facts not in dispute; or (3) providing an opportunity for LCCYS to respond, pursuant to Fed. R. Civ. P. 56(f). In particular, LCCYS contends that Bower's response to summary judgment failed to address whether the LCCYS policy, rather than the individual acts of caseworker Lightel, "shocked the conscience." LCCYS also disputes its liability for damages for the entire 75-day separation because its policy addressed only the initial removal and there were several interim court proceedings.

The Court anticipated the LCCYS argument; cited Rule 56(f); and explained, at length, why additional notice was not required. *See* Summary Judgment Opinion at 17-18. The Court adheres to that determination.

4

In support of its position, LCCYS cites *DL Resources v. FirstEnergy Solutions Corp.*, 506 F.3d 209 (3d Cir. 2007), a breach of contract case.  Tellingly, LCCYS fails to mention – let alone distinguish – *Croft v. Westmoreland County Children and Youth Services*, 103 F.3d 1123, 1126 (3d Cir. 1997), a precedential opinion in a child custody/substantive due process case that this Court discussed extensively in its Summary Judgment Opinion.

As LCCYS recognizes, in *DL Resources*, the Court of Appeals explained that summary judgment may be awarded sua sponte to a non-moving party, without providing notice pursuant to Fed. R. Civ. P. 56(f), if: "(1) the point at issue is purely legal; (2) the record was fully developed[;] and (3) the failure to give notice does not prejudice the party."  506 F.3d at 224.[1]  The Court incorporates its previous Opinion, and explains again why this test is met.

As LCCYS concedes, the issue is purely legal.  Whether the government's conduct "shocks the conscience" is a matter of law for the courts to decide.  *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004).  The logical consequence of the Court's rejection of LCCYS' claim that it had not violated Bower's substantive due process rights was a determination that LCCYS had violated Bower's rights.

The legal issues were fully briefed.  It was undisputed that in July 2009, LCCYS had a policy "of seeking an ex parte Order of Court to remove a child from a mother who had tested positive for an illegal substance based upon that test result," LCCYS Brief at 12-13, and that Lightel had acted pursuant to its policy.  LCCYS Reply Brief at 4 ("these defendants have consistently argued that the policy in place guided all of Ms. Lightel's acts").  LCCYS conceded the existence of this policy – the focus of its argument was that the policy was not unconstitutional.  LCCYS Reply Brief at 5.  Irrespective of Bower's arguments, LCCYS had

---

[1] In *DL Resources*, the Court held that notice was required because the claim at issue was not an abstract question of law, it was highly fact-bound, and the non-moving party bore the burden of persuasion.

every incentive and opportunity to demonstrate that its policy had not violated Bower's substantive due process rights. Thus, LCCYS' objection that it was deprived of an opportunity to address whether its policy shocks the conscience rings hollow – that was precisely the gravamen of its earlier argument.

Moreover, the evidentiary record was fully developed. Discovery was complete and LCCYS submitted an extensive appendix to the Court. The only alleged disputes of fact now identified by LCCYS are: (1) the interpretation of the July 15 confirmatory test by Quest which showed that the level of opiates in Bower's blood was "NONE DETECTED"; and (2) that the Court allegedly failed to recognize that Julie Jendrysik, who performed a drug and alcohol evaluation of Bower on July 27, 2009, "did not believe Bower and communicated this disbelief to [LCCYS]." Neither of these constitutes a material fact dispute. As to the Quest blood test, the Court accurately depicted the content of the exhibit submitted by LCCYS (LCCYS Exhibit C). Even in the light most favorable to LCCYS, the Quest test fails to justify the LCCYS decision to take Baby Brandon into custody. As to Jendrysik, the Court did, in fact, recognize those facts and stated: "Jendrysik called Lisa Matteo at LCCYS to express her belief that Bower had not been truthful regarding her drug history." Summary Judgment Opinion at 7. Moreover, both the Quest test results and the Jendrysik evaluation occurred after Baby Brandon had already been taken into custody by LCCYS.

LCCYS was not prejudiced by the grant of summary judgment to Bower. LCCYS had fully briefed the substantive due process claim on several occasions. This Court had discussed the contours of the substantive due process claim against LCCYS at length in its November 14, 2011 Memorandum Opinion in denying LCCYS' motion to dismiss. Judge David Stewart Cercone of this Court also addressed very similar issues involving the same LCCYS and

6

Jameson policies in *Mort v. Lawrence County Children and Youth Services, et al.*, 2011 WL 3862641 (W.D. Pa. August 31, 2011).  Thus, LCCYS certainly had a full and fair opportunity to present its arguments and evidence to the Court.

Moreover, LCCYS was well aware of the precedential opinion of the United States Court of Appeals for the Third Circuit in *Croft*.  LCCYS had discussed the *Croft* opinion at length in its briefing, including block quotations from that opinion.  Thus, LCCYS was, or should have been, aware of the actual holding and result in *Croft*.  As this Court explained in its Summary Judgment Opinion:

> In *Croft*, the United States Court of Appeals for the Third Circuit faced this precise procedural posture – the Court had rejected the County's substantive due process argument and the parents had not filed a cross-motion for summary judgment.  The majority opinion remanded the case to the district court to enter "automatic summary judgment on [the parents'] claims." 103 F.3d at 1127 n.6.  The same result is appropriate in this case.

The Court granted summary judgment sua sponte in accordance with *Croft*.  As noted above, LCCYS has not even attempted to address or distinguish *Croft*.  Accordingly, LCCYS has not met its burden to justify reconsideration.

As to damages, the Court directly addressed and rejected the LCCYS argument that its damages should be limited to the initial removal because there was no evidence of a post-removal policy.  Summary Judgment Opinion at 15-17.  Without reiterating that discussion in full, it is well-settled that: "To override the parental interest the state must have some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Croft*, 103 F.3d at 1126.  LCCYS never developed such evidence. Thus, the entire 75-day deprivation of Bower's parental rights remained unjustified and in violation of substantive due process.  Once LCCYS wrongfully took custody of Baby Brandon,

Bower was powerless to get him back. By contrast, LCCYS could have mitigated Bower's damages by dismissing its custody petition. *See Mort*, 2011 WL 3862641 at *5.

Although *B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013), addressed both substantive and procedural due process claims, the Court adheres to its conclusion that *B.S.* provides guidance as to the appropriate measure of damages in this case. To wit: (1) when the government intrudes on the parent-child relationship, it implicates "a fundamental liberty interest of the parent who loses custody" and risks liability for having caused such a deprivation wrongly, *Id*. at 272; (2) because a constitutional deprivation occurs upon the initial removal of the child from the mother, being heard much later fails to address the harm, *Id*.; (3) after a deprivation, the government must work promptly to minimize the parent-child separation (the time should ordinarily be measured in hours or days, not weeks), *Id*. at n.31; and (4) in view of the extremely important liberty interests at stake, the due process clause imposes duties on LCCYS regardless of whether or not state law independently imposes that obligation, *Id*. at 273.

In sum, the Court adheres to its determination: "The damages suffered by Bower occurred as a direct result of the LCCYS removal policy and continued throughout the entire period of the separation." LCCYS "is liable under § 1983 for whatever damages a jury may deem appropriate to redress that violation." *Id*. at 275.

Conclusion

For the reasons set forth above, DEFENDANT'S MOTION TO AMEND JUDGMENT PURSUANT TO F.R.CIV.P. 59(e) (ECF No. 64) will be **DENIED**. Bower is entitled to summary judgment against LCCYS on Count I (substantive due process) and the issue of damages will be submitted to a jury.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EILEEN A. BOWER,<br>                    Plaintiff,<br><br>         v<br><br>LAWRENCE COUNTY CHILDREN AND<br>YOUTH SERVICES,<br>                    Defendant. | )<br>)<br>)<br>)<br>) 2:11-cv-931<br>)<br>)<br>)<br>)<br>) |

### ORDER OF COURT

AND NOW, this 19th day of September 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that DEFENDANT'S MOTION TO AMEND JUDGMENT PURSUANT TO F.R.CIV.P. 59(e) (ECF No. 64) is **DENIED**.

                                                              BY THE COURT:

                                                              s/Terrence F. McVerry
                                                              United States District Judge

cc:     **Stanley T. Booker, Esquire**
        Email: stb233@yahoo.com

        **Marie Millie Jones, Esquire**
        Email: mjones@jonespassodelis.com